USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/13/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
PHILIP HAFFORD,                                              :
                                                             :
                              Plaintiff,                     :
                                                             :    16-CV-4425 (VEC)(SN)
                                                             :
             -against-                                       :    OPINION AND ORDER
                                                             :
AETNA LIFE INSURANCE COMPANY,                                :
                                                             :
                                                             :
                              Defendant.                     :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      This is an action for review of a denial of disability benefits under Section 502 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiff Philip Hafford ("Hafford") was previously employed as a sheet metal mechanic by L-3 Communications Corp. He suffered an injury on the job and sought long-term disability benefits pursuant to a long-term disability plan offered in connection with his employment. Defendant Aetna Life Insurance Company ("Aetna") is the plan fiduciary and administrator. Aetna denied Hafford's claim and his subsequent appeal of that decision. Hafford seeks judicial review of Aetna's decision. Aetna moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, and Hafford cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

      The Court referred this case to Magistrate Judge Netburn for preparation of a report and recommendation. On June 13, 2017, Magistrate Judge Netburn filed a report recommending the Court grant Hafford's motion and deny Aetna's motion. Dkt. 42 (the "R&R"). Both parties have objected to the R&R. The critical question is whether Magistrate Judge Netburn properly

applied a *de novo* standard of review to Aetna's denial of benefits. Aetna contends that the more deferential arbitrary and capricious standard applies. For the reasons that follow, the Court agrees with Aetna and adopts in part and rejects in part the R&R. Applying the proper standard, the Court finds that Aetna's decision was supported by substantial evidence and is entitled to deference. Accordingly the Court GRANTS Aetna's motion for summary judgment and DENIES Plaintiff's motion for judgment on the pleadings.

## BACKGROUND

The parties do not object to the Magistrate Judge's excellent recitation of the facts of this case, and the Court adopts them in full. The Court assumes familiarity and summarizes the facts only briefly and without limitation. Hafford injured his back while operating an oven door at an L-3 facility in Corpus Christi, Texas in March 2013. A.R. 190, 206. He was treated by a physician, Dr. James D. Key, and a physical therapist, Keitaro Abe. Key referred Hafford for x-rays and an MRI, which revealed only "minimal" and "mild" damage to the spine. A.R. 432-35. Abe observed that Hafford had reduced range of motion, pain, and weakness. A.R. 460-61. Ultimately, Key diagnosed Hafford with "lumbar disc displacement and lumbosacral radiculopathy and thoracic sprain." A.R. 560.

The state of Texas, which was processing Hafford's claim for worker's compensation, ordered a functional capacity evaluation (or "FCE"). The State's orthopedic surgeon, Dr. Kenneth Lee, opined that the deformities in Hafford's thoracic spine were the result of degenerative conditions and were not the result of any acute injury. A.R. 438. The physical therapist conducting the FCE, Richard Wymer, concurred in Abe's assessment of Hafford's limited functionality and recommended that Hafford be limited to "light medium" work. A.R. 452. But Wymer also noted a number of inconsistencies in Hafford's exam that raised questions about Hafford's effort and the FCE results. Among other things, Hafford's range of motion

2

appeared to vary, depending on whether he was being tested; Hafford exhibited symptoms in his upper extremities that other doctors subsequently pointed out could not be tied to a lower back injury; Hafford's "dynamic" lifting scores were greater than his static scores; his reported pain level was inconsistent with the observed changes in his heart rate; and at times it appeared to Wymer that Hafford was not providing "full resistance" or was exerting a "sub-maximal effort." A.R. 399, 450, 451, 453.

At the direction of the State, Hafford was examined by a second physician, Dr. Mayorga. Dr. Mayorga concluded that Hafford had "some mild tenderness" in his thoracic spine, a painful, but full, range of motion, and full muscle strength in all groups. A.R. 444. Mayorga also found muscle spasms with dysmetria and non-verifiable radicular complaints in Hafford's lumbosacral spine. A.R. 446. But, overall, Dr. Mayorga concluded that Hafford had no impairment in his thoracic spine and only a 5% impairment of his lumbosacral spine. A.R. 445-46. Mayorga concurred in Wymer's finding that Hafford was fit for only "light" work. A.R. 446.

Aetna denied Hafford's claim on October 11, 2013. The nurse who initially reviewed the claim concluded that the FCE was unreliable in light of Wymer's concerns regarding Hafford's effort and noted that Hafford's reports of paresthesia (tingling or burning sensation) were not supported by diagnostic imaging of his spine. A.R. 214. An orthopedic surgeon, Dr. Robert Cirincione, also reviewed Hafford's file and concluded that Hafford's symptoms were essentially unsupported by objective evidence. Key told Cirincione that Hafford had no objective evidence of neurological deficits. A.R. 399. Cirincione rejected the previous doctors' descriptions of Hafford's functional limitations as a "discussion of the claimant's subjective complaints." A.R. 399. According to Cirincione, none of the imaging studies of Hafford's back evidenced an acute trauma. Instead, the studies showed normal degenerative changes and did not reveal compression of the spinal cord or nerve root. A.R. 399. Like the Aetna nurse and Wymer,

3

Cirincione also noted that Hafford had exhibited symptoms during the FCE that, anatomically speaking, could not be related to an acute back injury and that Hafford's heart rate and blood pressure during the FCE were not consistent with maximum effort. A.R. 399-400.

Although Hafford's appeal was due by April 8, 2014, he did not appeal Aetna's decision until January 19, 2015. A.R. 323-24. Along with his appeal, Hafford submitted an additional report from Mayorga, reports from a new physician, Dr. Molly Biehl, and an evaluation performed for the Social Security Administration by a physician's assistant, Audie Horn. Mayorga diagnosed Hafford with thoracic and lumbosacral spine sprain and aggravation of pre-existing degenerative disc disease, which he believed were the result of an age-related condition. A.R. 363-64. Biehl found that Hafford would have significant difficulty performing work related tasks. Although Hafford's range of motion and motor functions were mostly normal, Biehl observed that Hafford was obese and presented with decreased rotation and extension and pain. A.R. 330-31. The SSA examiner found that Hafford was in discomfort, could walk no more than 40 feet at a time, and had a limited range of motion. A.R. 328-29.

Aetna determined that a second FCE was necessary to evaluate Hafford's appeal and so informed Hafford by letter dated February 9, 2015 (the "February 9 Letter"). A.R. 156. Aetna explained that an FCE was "necessary for further disability evaluation" and told Hafford that he would be contacted shortly by the FCE provider. A.R. 156. Ten days later, on February 19, 2015, Hafford called Aetna to confirm the FCE would be in Maine, to which he had relocated, rather than Texas. A.R. 165. Aetna was unable to schedule an FCE for a variety of reasons. On March 5, 2015 – two weeks after Hafford called Aetna to ask whether the FCE would be in Maine – Aetna wrote to Hafford to explain that it:

> "found a location [for the FCE] that was within 62.9 miles from your home in Bangor Maine however, the facility no longer has a physical therapist. We attempted to schedule

> you for a FCE in Holden Maine but the facility would not perform the testing based upon the restrictions and limitations applied by your doctor in August 2013."

A.R. 157 (the "March 5 Letter"). As an alternative, Aetna referred Hafford's file to another orthopedic surgeon, Dr. James Wallquist, for an independent review. A.R. 259. The next week, on March 11, 2015 (the "March 11 Letter"), Aetna wrote to Hafford again to explain the delay in processing his appeal. It wrote:

> We're reviewing your appeal . . . , but we need more time. In an effort to fully understand your impairment and functional capacity, your file was sent [to] an independent doctor who specializes in Orthopedic Surgery. At this time we are pending a copy of the final assessment. Given this reason we'll need a forty-five (45) day extension to complete the appeal review.

A.R. 158. Wallquist's review was completed on April 1, 2015. Wallquist found that there was inadequate physical evidence to support Hafford's claimed injury. Consistent with the previous reviews of Hafford's file, Wallquist concluded that there was no diagnostic evidence to support Hafford's claim: the results of his physical examinations did not include "significant quantifiable" findings as to his functionality, and the results of the FCE – the only full study of Hafford's functionality – were unreliable in light of the administering physical therapist's notes regarding Hafford's lackluster effort and inconsistent results. A.R. 306-08. Aetna denied Hafford's appeal. A.R. 160-62.

Hafford sought review of Aetna's judgment in this Court on June 13, 2016. His complaint asserts one claim for wrongful denial of benefits and breach of the terms of his long-term disability plan. Compl. (Dkt. 1) ¶¶ 31-38. Aetna moved for summary judgment on the administrative record pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dkt. 27, and Hafford cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Dkt. 34. The Court referred the motions to Magistrate Judge Netburn for preparation of a report and recommendation. Dkt. 36.

5

Magistrate Judge Netburn issued the R&R on June 13, 2017. Relying on the Second Circuit's recent decision in *Halo v. Yale Health Plan*, 819 F.3d 42 (2d Cir. 2016), and Judge Nathan's decision in *Salisbury v. Prudential Ins. Co. of Am.*, 238 F. Supp. 3d 444 (S.D.N.Y. 2017), the Magistrate Judge concluded that *de novo* review of Aetna's decision was required. In the Magistrate Judge's view, Aetna's letter to Hafford explaining the circumstances necessitating a 45-day extension of the appeal process was inadequate under the applicable Department of Labor regulation. *See* R&R at 20-22; *see also* 29 C.F.R. §§ 2560.503-1(i)(1)(i), (i)(3)(i) (if the plan administrator determines special circumstances warrant an extension it must "indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination" in writing). Applying *de novo* review, the Magistrate Judge concluded that there was insufficient evidence to support Aetna's decision to disregard the findings of the physicians who examined Hafford, especially in light of the fact that Aetna could have, but did not, schedule an independent medical examination (an "IME"). R&R at 29.

Both parties object to the R&R. Aetna's objection is dispositive, so the Court does not address Hafford's. Aetna argues that the Magistrate Judge improperly applied *de novo* review. It contends that its letters to Hafford sufficiently "indicated," as the regulation requires, that an extension was necessary because Aetna had been unable to schedule a second FCE and needed to send Hafford's file to a doctor for an independent review. Def.'s Obj. (Dkt. 43) at 6-7. Aetna also argues that the fact that a second FCE was necessary and that there was no provider near Hafford's home in rural Maine to conduct the FCE constituted "special circumstances" for purposes of an extension. Def.'s Obj. at 4-6.

The Court agrees with Aetna. Because Aetna complied with applicable regulations, its decision is subject to review using the arbitrary and capricious standard. Applying that standard,

the Court finds that Aetna's decision was supported by substantial evidence. Accordingly, the Court grants Aetna's motion for summary judgment.

## DISCUSSION

In reviewing a report, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The standard of review employed by the district court in reviewing a report depends on whether timely and specific objections to the report have been made. *Williams v. Phillips*, No. 03-CV-3319 (KMW), 2007 WL 2710416, at *1 (S.D.N.Y. Sept. 17, 2007). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02-CV-5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (quoting *Wilds v. United Parcel Service, Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)). Where, however, specific objections to the report have been made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38-39 (2d Cir. 1997). To the extent that a party's objections to the report "are conclusory or general, . . . , the district court reviews the [Report] for clear error." *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011). Because Aetna specifically objected to the Magistrate Judge's application of *de novo* review, the Court reviews the R&R under a *de novo* standard.

1. **Arbitrary and Capricious Review Applies**

Pursuant to ERISA, courts review a denial of benefits *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the benefit plan grants the administrator such discretion, courts "will not disturb the

7

administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)). The parties agree that the plan at issue provides Aetna discretionary authority; thus, ordinarily, the standard of review would be whether Aetna's decision was arbitrary and capricious. In *Halo v. Yale Health Plan*, however, the Second Circuit clarified that a plan administrator gets the benefit of the arbitrary and capricious standard only if it has complied fully with the letter of the applicable regulations under ERISA. *See* 819 F.3d at 56. According to the Second Circuit, the regulatory requirements were intended to be a procedural floor, necessary to protect employees under a statutory scheme that otherwise provides substantial discretion to the plan administrator. *See id.* at 55-56 ("there is a balance to be struck between encouraging employers and protecting employees . . . . '[W]e believe that plans should be held to the articulated standards as representing the minimum procedural regularity that warrants imposing an exhaustion requirement on claimants.'" (quoting ERISA Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70246-01, 70,256 (Nov. 21, 2000) (to be codified at 29 C.F.R. pt. 2560)).

The issue in this case is whether, consistent with *Halo*, Aetna followed the letter of Subsection 503-1(i)(1)(i), which permits a 45-day extension of the appeal process only if the plan administrator "determines" that there are "special circumstances" and "indicate[s]" the same in writing to the claimant. There is limited authority addressing what constitutes "special circumstances."[1] Like the Magistrate Judge, the Court finds Judge Nathan's opinion in *Salisbury* to be instructive. In *Salisbury*, the only special circumstance identified by the plan administrator

---

[1] In *Halo* itself it was clear that the Plan had not complied with the letter of the regulations and the question was whether "substantial compliance" was sufficient to trigger arbitrary and capricious review. The issue in this case is the logically antecedent question of what the regulations require.

8

was the need for further physician and vocational review. 238 F. Supp. 3d at 450. Judge Nathan explained that a need for further "physician and vocational review" does not qualify as a "special circumstance" because review by occupational experts and doctors is the *sine qua non* of claims review: "To find that [the plan administrator's] justification for seeking an extension in this case constituted a 'special circumstance' would mean that virtually any request for an extension would be permissible, an outcome the Department of Labor has expressly rejected." *Id.* For support, Judge Nathan relied on the Department of Labor's preamble to Subsection 503-1(i)(1)(i), which states that "special circumstances" refers to "reasons beyond the control of the plan" and does not encompass ordinary work challenges like "cyclical or seasonal fluctuations in claims volume."[2] 65 Fed. Reg. at 70,250.

The facts surrounding Aetna's determination to take an extension and the notice it provided to Hafford distinguish this case from *Salisbury*. As Aetna explained in its March 5 Letter, Aetna had tried over the course of several weeks to set up a second FCE so that it could fully evaluate Hafford's claim, but it was unsuccessful because Hafford had moved to a remote area in northern Maine[3] where there were few facilities capable of performing an FCE. A.R. 259. The fact that Hafford had moved to a rural area with limited medical facilities and that restrictions on his activity made it difficult to perform a complete FCE were not circumstances within Aetna's control. Moreover, that a second FCE was necessary to process Hafford's appeal

---

[2] The Tenth Circuit has held that the determination of what constitutes a "special circumstance" is committed to the discretion of the plan administrator, meaning that this determination itself should be subject to only arbitrary and capricious review. *See Holmes v. Colo. Coalition for the Homeless Long Term Disability Plan*, 762 F.3d 1195, 1206 (10th Cir. 2014). On the other hand, the Second Circuit has held that interpretation of the Department of Labor's regulations is a question of law for the Court. *See Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 582 (2d Cir. 2006). The Court need not grapple with this issue because under either arbitrary and capricious or *de novo* review, there were special circumstances in this case.

[3] Specifically, Hafford moved to East Millinocket, Maine, which is 64 miles north of Bangor, Maine. A.R. 88-89. Aetna did not hear back from the first facility at which it attempted to schedule the FCE because the facility was closed due to inclement weather. A.R. 259.

9

was itself a result of circumstances beyond Aetna's control and outside the ordinary course of business in processing an appeal. Although Hafford's claim was denied in October 2013, Hafford did not appeal for more than a year, eventually filing in January 2015, approximately eight months after the deadline and more than a year after the denial. A.R. 155, 323. Because of the delay, Hafford's records were stale and required updating.[4] Unlike in *Salisbury*, Aetna required more time because of issues that are not a part of an ordinary appeal and that were not caused by Aetna: Hafford lived in a remote area that made scheduling a second FCE difficult, his doctors had restricted his activity making an FCE difficult to administer, and the need for a second FCE resulted directly from the fact that Hafford filed the appeal more than a year after Aetna denied his claim.

Hafford's arguments to the contrary are unpersuasive. According to Hafford, requiring an FCE or independent expert review are ordinary aspects of the appeals process that do not amount to a "special circumstance." Pl.'s Resp. (Dkt. 46) at 6. Perhaps that is so, but it misses the point. The special circumstances here derive from the unusual challenges Aetna encountered in scheduling a second FCE – challenges caused by Hafford's new location and the restrictions imposed by his doctors – and the subsequent need to order an independent review, which would not have been necessary had the appeal been timely or if Hafford had still lived in Corpus Christi. Hafford relies also on the timeline of the appeal, which he contends shows that a 45-day extension was necessary because Aetna took 9 days to decide to seek an independent medical examination. Pl.'s Resp. at 7. Whether 9 days was longer than necessary for Aetna to re-evaluate its plan to conduct an FCE is irrelevant to whether the universe of challenges posed by

---

[4] Aetna has not cited record evidence that its appeals unit concluded that Hafford's records were stale, but Hafford does not challenge Aetna's claim that it ordered a second FCE on this basis. Moreover, common sense tells us that back injuries often improve with time.

Hafford's appeal – in terms of lateness and his remote residence – constituted a special circumstance necessitating an extension. The fact that Aetna took most of the additional 45 days to decide the appeal is also irrelevant to whether Aetna had a legitimate reason to take an extension in the first place. Pl.'s Resp. at 7.

The Magistrate Judge acknowledged that these "may well" be special circumstances, but concluded that Aetna provided Hafford with an inadequate explanation for its extension. R&R at 21. Neither the Magistrate Judge nor the parties has cited to any authority interpreting Subsection 503-1(i)(1)(i)'s requirement that the plan administrator provide written notice "indicat[ing] the special circumstances" that require an extension. 29 C.F.R. §§ 2560.503-1(i)(1)(i), (i)(3)(i). *Salisbury* did not address this issue directly because Judge Nathan concluded that no special circumstances existed. *See Salisbury*, 238 F. Supp. 3d at 450 (concluding that the reason given by Prudential in its notice to the claimant was inadequate to state a "special circumstance"). Hafford did not address this issue at all, and he has effectively conceded that Aetna's notice was adequate.[5]

Read in the context of the chain of Aetna's correspondence with Hafford, the Court finds that Aetna adequately "indicated" the special circumstances requiring a 45-day extension. The March 5 Letter detailed the difficulties in scheduling an FCE near Hafford's home and explained that, as a result, Hafford's file would be sent to an independent reviewing doctor. A.R. 157. One week later, Aetna informed Hafford that an extension was necessary because his file had been "sent [to] an independent doctor who specialize[s] in Orthopedic Surgery," A.R. 158; in other words, Aetna needed more time because of the exact circumstances Hafford had been

---

[5] Hafford also failed to raise this issue in his supplemental briefing to the Magistrate Judge on the appropriate standard of review. *See* Dkt. 40.

informed of the week prior. From Hafford's vantage point, the "special circumstances" had to have been clear. While the Magistrate Judge read the March 11 Letter as a standalone document, divorced from the chain of correspondence that preceded it, the regulations do not require such an approach, and this Court declines to take such an approach.

The Court's conclusion is supported by the Department of Labor's explanation of the notice requirement and a comparison to parallel notice provisions in the same regulations.[6] According to the Department of Labor, the notice requirement is necessary to "keep the claimant well informed as to the issues that are retarding decisionmaking and any additional information the claimant should provide." 65 Fed. Reg. at 70,249. That is consistent with Second Circuit case law interpreting other notice provisions of Subsection 503-1, which, the Circuit has explained are designed to foster a meaningful dialogue between the plan administrator and the member. *Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 288 (2d Cir. 2000). As explained *infra* it is clear that purpose was satisfied here: Hafford was well-informed of the reasons for the delay in processing his appeal, and Aetna had a robust dialogue with Hafford.

In contrast to Subsection 503-1(i)(1), the regulations are explicit when the Department of Labor intends to require a detailed explanation of the plan administrator's reasoning. For example, Subsection 503-1(f)(3) provides that a plan administrator's notice that more time is necessary to make an initial benefits determination must "*specifically explain* the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues . . . ." 29 C.F.R. § 2560.503-1(f)(3) (emphasis added). And in Subsection 503-1(j), the Department specified that

---

[6] The dictionary definition of "indicate" is not especially instructive, but it supports the Court's reasoning. The primary definition of the word is "to point out or point to." The slightly more helpful secondary definition is "to state or express briefly" and the synonym is to "suggest." *Indicate*, Webster's New Collegiate Dictionary (8th ed. 1980). To the extent relevant, these definitions imply that the word "indicate" does not require a detailed statement of reasons.

notices of benefit determinations on appeal must include, "in a manner calculated to be understood by the claimant," among other things, the "specific reason or reasons for the adverse determination" and "reference to the specific plan provisions on which the determination is based." *Id.* at § 2560.503-1(j)(1)-(2). The detailed notice requirements in Subsections 503-1(f)(3) and 503-1(j) are not surprising because notice under these subsections potentially concerns the merits of the individual's claim for benefits, and, in the case of Subsection 503-1(j)(1), may be a basis for further review. By contrast, notice under Subsection 503-1(1)(i)(1) appears to serve the more limited purpose of keeping the claimant updated on the progress of his claim.

Even assuming that Aetna's notice to Hafford did not adequately "indicate" the special circumstances, the Court would find that the error was "inadvertent and harmless." *See Halo*, 819 F.3d at 57-58. Relying on *Salisbury*, the Magistrate Judge concluded that Aetna's failure was not inadvertent because "Aetna knowingly sought an extension without providing Hafford legally adequate notification of 'special circumstances' justifying such an extension." R&R at 22. The Magistrate Judge's reasoning elides an important distinction between *Salisbury* and this case. In *Salisbury*, the plan administrator's "special circumstance" was not special and it did not justify an extension. 238 F. Supp. 3d at 449-50. The Court agrees that the decision to take an extension is, by definition, not "inadvertent." By contrast, the shortcoming here is, at worst, a failure to include in the March 11 Letter details (that had been provided in the February 9 and March 5 Letters) "indicating" the special circumstances. Failing to consolidate all of the required detail into one letter to Hafford is akin to the examples of inadvertence identified by the Second Circuit in *Halo*. *See Halo*, 819 F.3d at 57 (including as examples of an inadvertence sending a response to an urgent claim within 73 hours when the regulation requires the plan to do so in 72 hours or sending a notice within 16 days of receipt of a claim, when the regulation

requires the plan administrator to do so within 15 days). As in the examples identified by the Second Circuit, Aetna's potential error relates to a procedural issue, rather than the merits of the plan administrator's conduct. Moreover, as the Magistrate Judge concluded, the error was harmless in this case. *See* R&R at 21.

In sum, the Court holds that Aetna complied with the requirements of Subsection 503-1(i)(1)(i) in determining that there were "special circumstances" necessitating a 45-day extension of the time to decide Hafford's appeal and provided Hafford with adequate notice "indicating" those circumstances. Accordingly, the arbitrary and capricious standard of review applies to Aetna's denial of Hafford's claim.

2.     **Aetna's Denial of Claim Was Supported by Substantial Evidence**

"Under the arbitrary and capricious standard of review, 'a court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Zeuner v. Suntrust Bank Inc.*, 181 F. Supp. 3d 214, 219 (S.D.N.Y. 2016) (quoting *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010)). "Substantial evidence is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and . . . requires more than a scintilla but less than a preponderance.'" *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (quoting *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995)). The "scope of review is narrow" and the Court may not "substitute [its] own judgment for that of the insurer as if [it] were considering the issue of eligibility anew." *Hobson*, 574 F.3d at 83-84 (quoting *Pagan*, 52 F.3d at 442).

Applying this deferential standard of review, the Court concludes that Aetna did not abuse its discretion in denying Hafford's claim. Aetna based its denial of Hafford's claim on a review of his medical records by two independent orthopedic surgeons, Wallquist and

Cirincione. Cirincione concluded that there was no objective evidence to support Hafford's claimed symptoms, a fact that was confirmed to Cirincione by Hafford's treating physician Key. Cirincione also considered and rejected the FCE conducted by Wymer. Cirincione rejected the FCE for essentially the reasons provided by the physical therapist who conducted the test, including that Hafford's blood pressure and heart rate did not support his claim that he was performing at maximum effort and that Hafford appeared to have a better range of motion when he was not performing tasks as a part of the test. A.R. 399, 453. Reviewing substantially the same evidence on appeal, Wallquist reached the same conclusions: diagnostics of Hafford's spine showed "no neurological deficits"; the FCE was of dubious reliability given the documented concerns regarding Hafford's effort during the test; and the physicians who examined Hafford did not quantify the limits on his functionality. *See* A.R. 305-08. As the Magistrate Judge explained, there was also evidence to support Hafford's claim, including the observations of Hafford's examining doctors who described Hafford's pain, difficulty walking, spasms, and limited range of motion. *See* A.R. 328-29, 330-31, 442-47, 506-24. But, arbitrary and capricious review does not require Aetna's decision to be supported by all of the evidence or even a preponderance. Applying the appropriate, and deferential, standard of review, the Court finds that Aetna did not abuse its discretion by relying on the lack of objective evidence correlated to Hafford's symptoms and the noted flaws in his FCE.

      Hafford raises three objections to Aetna's denial of his claim. First, he argues that Aetna improperly relied on the opinion of doctors who had not physically evaluated him. Second, Hafford argues that Aetna abused its discretion by resolving an issue of credibility – whether his pain was genuine – without an independent examination. And third, Hafford contends that Aetna improperly disregarded the Social Security Administration's finding that he was disabled. Pl.'s Mem. (Dkt. 35) at 12-16. As discussed below, these arguments lack merit.

Hafford has not cited any controlling authority for the proposition that a plan administrator abuses its discretion by relying on the opinion of doctors who have not physically evaluated a patient. To the contrary, as Hafford acknowledges, the Second Circuit has held that a plan sponsor is not required to conduct an in-person examination. *See Hobson*, 574 F.3d at 91. As the Second Circuit explained in *Hobson*, a contrary rule would "risk[] casting doubt upon, and inhibiting, 'the commonplace practice of doctors arriving at professional opinions after reviewing medical files,' which reduces the 'financial burden of conducting repetitive tests and examinations.'" *Id.* (quoting *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006)); *Fitzpatrick v. Bayer Corp.*, No. 04-CV-5134 (RJS), 2008 WL 169318, at *14 (S.D.N.Y. Jan. 17, 2008) ("any suggestion that an administrator's physicians are *required* to conduct an in-person, physical examination . . . is unsupported by law"). And, as in *Hobson*, there is no evidence that Aetna's independent experts refused to consider the results of Hafford's in-person examinations or ignored his treating physicians. *Hobson*, 574 F.3d at 90. Wallquist noted the lack of specificity and quantifiable results in the examining doctors' reports, A.R. 306-07, and Cirincione spoke directly to Key, who told Cirincione that he had no objective data to back up Hafford's reported pain, A.R. 399.

For similar reasons, Aetna was not *required* to conduct a physical examination in order to resolve Hafford's subjective complaints of pain. "[A] distinction exists . . . between the amount of fatigue or pain an individual experiences, which . . . is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured." *Tortora v. SBC Commc'ns, Inc.*, 739 F. Supp. 2d 427, 444 (S.D.N.Y. 2010) (quoting *Strope v. Unum Provident Corp.*, No. 06-CV-628C (SR), 2010 WL 1257917, at *4 (W.D.N.Y. Mar. 25, 2010)). The issue for Aetna was not whether Hafford was in pain; it was whether his pain and underlying injuries translated into functional limitations that made it impossible for him

16

to perform his job. Both independent experts grappled with the results of Hafford's physical examinations, including his complaints of pain, and concluded that they did not provide reliable evidence of Hafford's functional limitations. *See* A.R. 307, 399. Aetna's decision was not unreasonable, even if it was possible to reach a different conclusion. As the Second Circuit has made clear, it is not unreasonable for a plan administrator to guard against fraudulent or unsupported claims of disability by looking to whether there is objective evidence that a claimant's ailments are debilitating. *Hobson*, 574 F.3d at 88; *see also Fitzpatrick*, 2008 WL 169318, at *10 ("several courts in this district have found that it is not unreasonable or arbitrary for a plan administrator to require the plaintiff to produce objective medical evidence of total disability in a claim for disability benefits").

Finally, the Court rejects Hafford's argument that Aetna placed too little stock in the Social Security Administration's finding that he was disabled. Standing alone, the fact that a claimant has been awarded social security benefits is not a basis to find that a plan administrator abused its discretion. *See Ianniello v. Hartford Life and Acc. Ins. Co.*, No. 10-CV-370 (SJF), 2012 WL 314872, at *3 (E.D.N.Y. Feb. 1, 2012) (insurer is "not bound by decision of the Social Security Administration").[7]

---

[7] There is no evidence that Aetna's decision-making was affected by a conflict of interest. An affidavit from an Aetna senior director explains that Aetna claims personnel are paid fixed salaries and are not evaluated based on whether they approve or deny claims. Decl. of Debra Comar ("Comar Decl.") (Dkt. 31) ¶¶ 4, 6. The appeals unit at Aetna is segregated from the initial claims unit. Comar Decl. ¶ 9. Additionally, Aetna's financial underwriting unit is separate from its claims-review unit. Comar Decl. ¶¶ 10-13.

## CONCLUSION

The Court adopts the factual recitation in the R&R and otherwise declines to adopt the R&R. Aetna's motion for summary judgment is GRANTED. Hafford's motion for judgment on the pleadings, construed by the Magistrate Judge as a motion for summary judgment, is DENIED and his objections to the R&R are overruled as moot. The Clerk of the Court is respectfully directed to enter judgment in favor of Defendant and terminate the case.

**SO ORDERED.**

Date: September 13, 2017
New York, New York

*Valerie Caproni*
**VALERIE CAPRONI**
**United States District Judge**